UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

FRANK PIZZONIA,

Defendant.

---

S1 20 Cr. 645-5 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Frank Pizzonia ("Pizzonia") moves to (1) dismiss the indictment against him; (2) suppress evidence obtained pursuant to warrants that authorized the seizure of his cell phone's historic cell-site data and prospective location information; and (3) change venue. For the reasons below, the Court denies Pizzonia's motions in their entirety.

I. **Pertinent Background**

On February 3, 2021, a grand jury in this District returned Superseding Indictment S1 20 Cr. 645 (PAE). *See* Dkt. 19 ("Indictment"). It charged Pizzonia and four others in two counts. Count Two charged federal program fraud, in violation of 18 U.S.C § 666; and Count One charged a conspiracy to violate that statute, in violation of 18 U.S.C. § 371. The charges arise from the defendants' alleged participation, with co-workers, between 2017 and May 2019, in a scheme to submit false time records to the Long Island Railroad ("LIRR"), a subdivision of the Metropolitan Transportation Authority ("MTA"). As alleged, these time records claimed bogus overtime hours that the co-conspirators had not worked.

On February 4, 2021, Pizzonia was arrested, pursuant to an arrest warrant.

y

w

## II. Pizzonia's Motion to Dismiss Count Two of the Indictment

Pizzonia first moves to dismiss Count Two, arguing that it is facially insufficient and unconstitutional as applied to him.

### A. Sufficiency of Count Two

Pizzonia argues first that Count Two does not plead the elements of 18 U.S.C. § 666. That statute, in relevant part, reads:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists—
>
> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
>
> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
>
> > (i) is valued at $5,000 or more, and
> >
> > (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; . . . .
>
> shall be fined under this title, imprisoned not more than 10 years, or both.
>
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.
>
> (c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

Pizzonia's challenge fails.

An indictment need contain only "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future

prosecution based on the same set of facts." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962)). Accordingly, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Id.* (quotation omitted).

Count Two easily meets those standards. It reads:

> From at least in or about 2017, up to and including in or about May 2019, in the Southern District of New York and elsewhere, . . . the defendants, being agents of an organization, State and local government and an agency thereof, to wit, employees of the Long Island Rail Road, a subsidiary of the Metropolitan Transportation Authority, knowingly did embezzle, steal, obtain by fraud, and otherwise without authority knowingly did convert to the use of a person other than the rightful owner, property that is valued at $5,000 and more and is owned by and is under the care, custody, and control of such organization, government, and agency, while such government and agency was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, . . . PIZZONIA submitted false time records, which fraudulently overstated the number of hours that [he] had worked, and thereby each received over $5,000 in payments for hours that [he] did not in fact work.

Indictment ¶ 4. The language of Count Two thus contains all that the law requires. It tracks the language of the statute, including all elements. And it goes beyond, to specify the time period of the charged offense (2017 through in or about May 2019) and its nature (the submission to the LIRR by Pizzonia of time records that falsely claimed he had worked hours he had not worked).

Pizzonia argues that Count Two is facially insufficient because it fails to allege that he "stole embezzled, converted or obtained by fraud $5,000 or more *during a one year period.*" Dkt. 88 ("Pizzonia Br.") at 29 (emphasis added). That argument reflects Pizzonia's reading of § 666 to so require. Pizzonia, in other words, contends that the one-year period governing the jurisdictional element of § 666 (which requires the covered "organization, government, or agency" to have received within "any one year period" "benefits in excess of $10,000 under a Federal program") also apply to its *actus reus* element (which requires the stealing,

3

embezzlement, conversion, or fraudulent obtaining of $5,000). *See United States v. Valentine*, 63 F.3d 459, 464 (6th Cir. 1995) (so holding); *United States v. Doty*, No. 18 Cr. 34 (GW), 2018 WL 3420812, at *3 (S.D. W. Va. July 13, 2018) (same). The Government adopts a different reading. It argues that the "one-year period" does not limit the period during which the $5,000 or more have been stolen, embezzled, converted, or fraudulently obtained. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *United States v. Newell*, 658 F.3d 1, 24 (1st Cir. 2011) (citing cases upholding under § 666 the aggregation of transactions forming a course of conduct).

The Court does not have occasion at this pretrial stage and on Pizzonia's facial challenge to resolve this debate over statutory construction, or, more broadly, to determine the required relationship under § 666, if any, between the one-year period (or periods) in which the "organization, government or agency" received more than $10,000 in federal funding and the period in which the defendant unlawfully obtained $5,000 or more. That is because Count Two tracks the language of § 666. As such, regardless of how the statutory terms are construed, the Indictment is facially sufficient. *See Stavroulakis*, 952 F.2d at 693; *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013); *United States v. Adelson*, 237 F. App'x 713, 716–17 (2d Cir. 2007); *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).

In the event this case proceeds to trial, Pizzonia will be at liberty to pursue this reading of § 666. And in the event the Court is persuaded by Pizzonia's reading, the Court will use it to guide to its rulings on pertinent motions, if any, made under Federal Rule of Criminal Procedure 29 after the close of the Government's case, and in formulating jury instructions. *See, e.g.*,

4

*United States v. Berger*, 22 F. Supp. 2d 145, 152–53 (S.D.N.Y. 1998) (declining to dismiss indictment where indictment tracked language of § 666, while noting court's latitude to instruct jury on statutory elements).

### B. Constitutionality of Section 666

Pizzonia next argues that it would be unconstitutional to apply § 666 to him on the facts he expects will be developed at trial. He anticipates that the evidence will show that, although the MTA paid him for the overtime hours that his timesheets claimed, private, third-party contractors ultimately reimbursed the MTA for such compensation. On the premise that a conviction under § 666 requires a nexus between the federal funds and ill-gotten gains at issue, Pizzonia therefore argues that the money he received ultimately came from private coffers and did not draw down the federal fisc.

For two reasons, Pizzonia's claim fails. First, the Supreme Court has rejected a facial challenge to a § 666 charge on this very ground. *See Sabri v. United States*, 541 U.S. 600, 604– 08 (2004). Pizzonia does not coherently explain why, given the Supreme Court's refusal to find the statute void for failure to requiring a nexus between the federal funds and the misconduct at issue, his challenge is tenable. Second, to the extent that an as-applied challenge might potentially lie, it is premature to resolve it. That is because, as Pizzonia concedes, his argument embeds a question of fact. Pizzonia Br. at 35. Pending trial, there is no record as to the facts potentially relevant to such an argument, including the extent and nature of federal funding of the projects implicated by Pizzonia's work. And it is black letter law that the Government is not required to showcase, or demonstrate the sufficiency of, its proof until the close of its case-in-chief at trial. *See United States v. Rittwegar*, 259 F. Supp. 2d 275, 289 (S.D.N.Y. 2003) (citing *United States v. Elson*, 968 F. Supp. 900, 905 (S.D.N.Y. 1997); *United States v. Gambino*, 809 F.

Supp. 1061, 1079 (S.D.N.Y. 1992); *United States v. Marchese*, No. S7 89 Cr. 229 (PKL), 1991 WL 60338, at *2 (S.D.N.Y. Apr. 11, 1991)). Therefore, even assuming *Sabri* leaves room for an as-applied challenge, the Court cannot grant Pizzonia's claim at this stage. Pizzonia ultimately recognizes this principle, stating that he "raise[s] the argument here in anticipation of renewing this motion at the end of trial." Pizzonia Br. at 35.

The Court accordingly denies Pizzonia's constitutional challenge, without prejudice to Pizzonia's right at trial to make the same or similar arguments.

### III. Pizzonia's Motions to Suppress

Pizzonia also seeks to suppress the fruits of two warrants which the Government sought during its investigation. On October 29, 2019, the Hon. James L. Cott, United States Magistrate Judge, issued a warrant authorizing, as relevant here, the seizure of historic cell-site information regarding Pizzonia's cell phone covering the period January 1, 2018 to May 1, 2019 (the "Cell Site Warrant"). On January 29, 2021, less than a week before Pizzonia's arrest, the Hon. Debra Freeman, United States Magistrate Judge, issued a warrant authorizing, as relevant here, the seizure of 45 days of prospective location information from Pizzonia's cell phone (the "GPS Warrant").

#### A. Challenge to the Cell Site Warrant

In pursuing suppression, Pizzonia argues that the Cell Site Warrant was overbroad and, in part, unsupported by probable cause.

These challenges largely reflect Pizzonia's particular reading of § 666, under which $5,000 in proceeds of the offense must have been received within a one-year period matching a period in which the covered agency received more than $10,000 in federal funding. Pizzonia does not dispute that the warrant sets out probable cause of the commission of a § 666 offense

during the calendar year 2018. But, Pizzonia posits, the only period for which a warrant could properly seek evidence is calendar year 2018, because the evidence that the application for the warrant recites of the MTA's receipt of federal funding relates only to 2018, and the evidence it recites of Pizzonia's overtime fraud predominantly relates to 2018. *See* Dkt. 88-1, 10/29/19 Affidavit in Support of Warrant ("10/29/19 Aff."), ¶¶ 7 ("During 2018, the MTA received benefits in excess of $10,000"), 11(b) (listing Pizzonia's earnings in 2018), 14(d)–(f) (listing examples, all in 2018, of Pizzonia's phone records placing Pizzonia several miles away from work during shifts in which he reported having worked). But, as Pizzonia notes, the Cell Site Warrant sought evidence for a 16-month period covering not only all of 2018 but also the first four months of 2019, through May 1, 2019. Cell Site Warrant ¶ 6. Pizzonia therefore argues that the warrant was overbroad to the extent it sought historical cell site data for the first four months of 2019, and that it lacked probable cause as to that period. He posits that "legally, no one can commit any single violation of § 666 over a 16-month period," and argues that, because the Cell Site Warrant sought data for a broader period than that on which the showing of probable cause was, ostensibly, based, it was defective. Pizzonia Br. at 21 (citing *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013)).

The standards governing this motion are familiar. Where a search has been conducted pursuant to a court-authorized warrant, "great deference" is due to a magistrate's determination that there is probable cause to search the premises. *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)) (internal quotation marks omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."

7

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). And the reviewing court's task is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Probable cause requires "only the probability, and not a *prima facie* showing, of criminal activity." *Id.* at 235. A warrant's "otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (quoting 2 W. LaFave, Search and Seizure § 4.6(a) (5th ed. 2012)).

Pizzonia's challenge to the warrant is easily put aside. For two reasons, even assuming *arguendo* that Pizzonia's reading were correct that § 666 requires the $5,000 fraud or theft to have occurred during a one-year period in which the covered entity received more than $10,000 in federal funding, such would not undermine the Cell Site Warrant.

First, Pizzonia does not point to any authority that the statutory one-year period needed to have tracked a *calendar* year—as opposed to a 12-month period beginning in the middle of a calendar year. The affidavit here recites the receipt of federal funds in 2018. And although the affidavit recites apparent false statements on timesheets for 2018, it also supplies evidence of similarly fictitious time entries in the second half of 2018 and in 2019. *See, e.g.*, 10/29/19 Aff. ¶ 16(b) (describing instance on February 25, 2019, in which Pizzonia and alleged co-conspirator engaged in several calls on a day when both reportedly worked the same shift but co-conspirator was not present at job site). On these facts, the Magistrate Judge would have had a substantial basis to find probable cause that fraudulent time entries occurring in the first four months of 2019 occurred within a 12-month period (say, beginning in mid-2018) occurred during a period in which the MTA had received more than $10,000 in federal funding. To be sure, the facts recited in the affidavit would not rule out the theoretical possibility that all federal funding for

8

the MTA was so front-loaded into early 2018 that the one-year period starting with the receipt of the last $10,000-plus would have terminated before May 1, 2019. But probable cause requires "only the probability, and not a *prima facie* showing, of criminal activity." *Gates*, 462 U.S. at 235. That standard was easily met here, even on Pizzonia's restrictive conception of liability under the statute.

Second, to the extent that Pizzonia faults the affidavit for not having tabulated $5,000 or more in bogus overtime claims in 2019, that is not a basis to challenge the warrant. Section 666's requirements for a legally valid charge in an indictment would not prevent the Government from seeking, in its investigation, evidence of fraudulent time sheets as to 12-month periods as to which the statutory $5,000 threshold had not yet been established. The governing standard for the warrant instead was whether evidence amounting to probable cause of a crime had been set out. Here, the warrant issued by Judge Cott was supported by an affidavit that met this standard. It recounted ample evidence that Pizzonia and co-conspirators had submitted bogus time entries during 2018 and the first few months of 2019.

Specifically, the affidavit attested to (1) a scale of overtime hours claimed by Pizzonia that were so implausibly high as to suggest vast overbilling, *see, e.g.*, 10/29/19 Aff. ¶ 12(b) (Pizzonia claimed 3,780 overtime hours on top of 1,747 regular hours in 2018, translating to approximately 10 hours of overtime each day on top of a normal 40-hour work week); (2) Pizzonia's implausibly high compensation making him the 29th-highest paid MTA employee in 2018, *id.* ¶ 11(b) ($305,000, of which $82,000 was Pizzonia's base salary and $223,000 was for overtime, for his services as a track worker performing routine maintenance on or around LIRR properties, *see id.* ¶ 9(b)); (3) evidence that on May 1, June 21, September 2, and September 3, 2018, Pizzonia participated in dozens of phone calls originating from Howard Beach (where he

9

lives) during asserted overtime shifts, *id.* ¶ 14(d)–(f); (4) an instance on February 25, 2019 in which Pizzonia and an alleged co-conspirator engaged in several calls when both reportedly worked the same shift but the co-conspirator was not present at the job site, *id.* ¶¶ 16, 16(b); and (5) a statement by MTA investigators that Pizzonia's phone records showed that he and his alleged co-conspirators had frequently used phones to communicate from locations other from their work sites during hours in which they claimed to have been working overtime, *id.* ¶ 14.

That showing was amply sufficient to supply probable cause both of a § 666 violation participated in by Pizzonia continuing into 2019 and that the cell phone records that were sought would yield evidence of such a violation. These records stood to disprove Pizzonia's claims on his timesheets of his whereabouts on specific days during that period, and therefore stood to help the Government establish elements of a violation of § 666 (or conspiracy to commit the same). And contrary to Pizzonia's premise, the Government was not required to establish all elements of an offense as a predicate to obtain a search warrant. Rather, all that is required is probable cause to believe that an offense has been committed and that the location to be searched houses evidence of such an offense. *See Gates*, 462 U.S. at 238; *United States v. McKenzie*, 13 F.4th 223, 237–38 (2d Cir. 2021); *United States v. Travisano*, 724 F.2d 341, 346 (2d Cir. 1983) ("In sum, the applicable standard to be derived from these principles is that there be a fair probability that the premises will yield the objects specified in the search warrant.").[1]

---

[1] Evidence uncovered of false timesheets of Pizzonia's for time periods other than those as to which the Government ultimately proved able to meet the statutory thresholds also had potential to be received at trial, as probative of his knowledge, intent, and common scheme or plan during the charged periods. *See* Fed. R. Evid. 404(b); *United States v. Reichberg*, 5 F.4th 233, 241 (2d Cir. 2021) ("Rule 404(b) makes evidence of uncharged conduct admissible to prove the defendant's intent in committing the charged conduct."); *United States v. Hoey*, 15 Cr. 229 (PAE), 2016 WL 270871, at *12 (S.D.N.Y. Jan. 21, 2016) (citing cases) (evidence of defendant's criminal acts outside of limitations period is "often admitted, under Federal Rules of Evidence

10

The Court accordingly rejects Pizzonia's motion to suppress evidence yielded by the Cell Site Warrant.

## B. Challenge to the GPS Warrant

Pizzonia separately challenges the GPS Warrant, which sought his prospective location data for a 45-day period beginning shortly before his 2021 arrest. First, he argues, there was no probable cause that a crime was then being committed, as the Government has not at any point alleged that his offenses extended past 2019, and his whereabouts in 2021 could not have been probative evidence of these completed offenses. Pizzonia Br. at 22. Second, he argues, insofar as the Government alternatively justified seeking his prospective location information as a means of facilitating his arrest—by identifying and/or confirming his residence—that justification was baseless. Pizzonia notes that the Government already had information as to his residence (*e.g.*, from bank, Verizon, and MTA records) and had no reason to view him as a flight risk. Pizzonia therefore casts the GPS warrant as deficient both as lacking probable cause and as overbroad. *Id.* at 23. The Government counters that Pizzonia's residence as of 2021 might help it establish his 2018–2019 fraud by establishing that location was a personal habitat (and not a work site), that Federal Rule of Criminal Procedure 41(c)(4) authorizes the issuance of a warrant seeking prospective location information to facilitate an arrest, and that before seeking such a warrant, the Government need not exhaust alternative sources of such information. Dkt. 83 ("Gov. Br.") at 25–26.

---

403 and/or 404, as evidence of pertinent background, including to explain the circumstances and context in which the defendant's actions within the limitations period occurred").

The Court denies this suppression motion as moot. On October 29, 2021, after close review of the facts and law, the Court issued an order noting that Pizzonia's motion raised non-trivial questions,[2] and directing the Government to notify the Court whether it intended to offer at trial any fruits of the GPS Warrant. Dkt. 107. On November 1, 2021, the Government filed a letter committing not to do so. Dkt. 108 ("[T]he Government commits not to offer any fruits of the January Warrant at trial."). That moots Pizzonia's challenge to the GPS Warrant, and his associated demand for a *Franks* hearing as to ostensible material omissions from the affidavit that sought it.[3]

## IV.    Pizzonia's Motion for a Change of Venue

Finally, Pizzonia moves to transfer venue due to allegedly prejudicial pretrial publicity. Specifically, he points to the fact of news articles about this prosecution, eight of which identify him by name. Pizzonia Br. 36–37. That motion lacks merit.

---

[2] The Government's latter justification for the GPS Warrant, which appears the more substantial, implicates challenging questions following *Carpenter v. United States*, 138 S. Ct. 2206 (2018). Even before *Carpenter*, the case law as to such warrants was unsettled. *Compare In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129 (E.D.N.Y. 2013) (authorizing issuance of search warrant to access prospective geolocation data for the purpose of aiding in the apprehension of a defendant); *with In re Application of U.S. for an Order Authorizing Disclosure of Location Information of a Specified Wireless Telephone*, 849 F. Supp. 2d 526 (D. Md. 2011) (finding such warrant improper, where defendant was not a fugitive). The 45-day duration of the GPS Warrant issued here raised additional non-frivolous questions.

[3] Pizzonia argues that a *Franks* hearing is required in light of supposedly material information omitted from the affidavit in support of the GPS Warrant that would have precluded a finding of probable cause. He did not, however, request a *Franks* hearing regarding the affidavit in support of the Cell Site Warrant. *See* Pizzonia Br. at 23 (purpose of a *Franks* hearing would be to exclude from trial "the results of the January 29, 2021 [GPS] Warrant and the fruits thereof"). Accordingly, the Government's commitment not to offer evidence obtained from the GPS Warrant moots the request for a *Franks* hearing.

The Court must grant a motion to transfer venue only if it "is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). Pertinent factors include:

> [T]the extent to which the government is responsible for generating the publicity, the extent to which the publicity focuses on the crime rather than on the individual defendants charged with it, . . . the likely effect of the publicity on the ability of potential jurors in the district to hear the evidence impartially[,] . . . the size of the venue, and the amount of time that has passed since the bulk of the negative publicity.

*United States v. Skelos*, 988 F.3d 645, 659 (2d Cir. 2021) (internal quotation marks omitted). The ultimate question is "not on the venire's 'mere exposure to pretrial publicity' but rather on the 'actual prejudgment by the venire of the issues to be decided in the case.'" *Id.* (quoting *United States v. Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010)).

Applied here, these factors do not come close to justifying, let alone requiring, a change of venue. The quotidian news articles cited by Pizzonia do not pose any risk of prejudicing the venire. On the contrary, the news coverage of this unexceptional case pales before the coverage in numerous high-profile cases which this District has lawfully housed trials. *See, e.g.*, *United States v. Salameh*, No. S5 93 Cr. 0180 (KTD), 1993 WL 364486 (S.D.N.Y. Sept. 15, 1993) (prosecution for World Trade Center bombing); *United States v. Gotti*, 399 F. Supp. 2d 214 (S.D.N.Y. 2005) (prosecution of organized crime family leader); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 65159 (S.D.N.Y. Jan. 15, 2004) (prosecution of celebrity businesswoman); *United States v. Ebbers*, No. S2 02 Cr. 1144 (BSJ), 2004 WL 2346154 (S.D.N.Y. Oct. 18, 2004) (prosecution of WorldCom chief executive); *United States v. Bonventre*, No. S2 10 Cr. 228 (LTS), 2011 WL 1197853 (S.D.N.Y. Mar. 30, 2011) (prosecution of employees of Bernard Madoff investment firm).

Only 8 of the 31 news articles—the most recent of which was published nearly a year before the trial in this case is set to begin—mention Pizzonia by name. And the Government is responsible for just a single press release in the case, which did not name Pizzonia. On these facts, given New York City's "large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain." *Skilling v. United States*, 561 U.S. 358, 382 (2010). Far from transfer being required, it would be, in this Court's assessment, an abuse of discretion to transfer venue from this District under the threadbare record supplied.

The Court accordingly denies Pizzonia's motion to transfer venue.

## CONCLUSION

For the reasons set forth herein, the Court denies Pizzonia's pretrial motions. The Clerk of Court is respectfully requested to terminate the motions pending at docket entries 66 and 88.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 12, 2021
    New York, New York